## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| CHESAPEAKE LOUSIANA, L.P., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:10-CV-359 (JRG) |
| | § | |
| BUFFCO PRODUCTION,INIC., ET AL., | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the following motions for summary judgment: (1) Defendants and Counter-Plaintiffs Wayne E. Freeman, Freeman Resources, Ltd., FRM GP, LLC, and Freeman Capital, Ltd.'s Motion for Summary Judgment Against Chesapeake Louisiana, L.P. and Harleton Oil & Gas, Inc. (Dkt. No. 69); (2) Intervenor Harleton Oil & Gas, Inc.'s Motion for Summary Judgment Against Chesapeake Louisiana, L.P. (Dkt. No. 77); (3) Plaintiff Chesapeake Louisiana, L.P.'s Traditional and No Evidence Motion for Summary Judgment (Dkt. No. 78); and (4) Defendants Frank M. Bufkin III, Buffco Production, Inc. and Twin Resources, LLC's Motion for Summary Judgment Against the Claims of Intervenor/Plaintiff Harleton Oil & Gas, Inc. (Dkt. No. 79). Upon consideration of the submitted briefing and the argument of counsel as to each of these motions, the Court holds that each is **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

Chesapeake Louisiana, L.P. ("Chesapeake") filed this lawsuit on September 13, 2010. The claims in this lawsuit arise out of a July 31, 2008 Letter Agreement (the "Letter Agreement") entered into between Chesapeake and Buffco Production, Inc. and Twin Resources, LLC (collectively, "Buffco"). Pursuant to the Letter Agreement, Chesapeake would acquire the

1

working interests of Buffco and its non-operating leasehold cotenants as to multiple oil and gas units in several counties in East Texas for a total consideration of $232,146,680.[1] Chesapeake would acquire a three-year term assignment of Buffco's "right, title and interest" in the properties described in Exhibits A-1, A-2, and A-3 to the Letter Agreement (the "Exhibits").

The Exhibits to the Letter Agreement describe various properties to be assigned to Chesapeake on three separate closing dates (the "Closing Dates"). Exhibit A-1 describes properties located in Panola and Sabine Counties to be closed on August 29, 2008. Exhibit A-2 describes properties located in Harrison County, including the Geisler Unit, to be closed on September 18, 2008. Exhibit A-3 describes properties located in Panola County, including the Bowen, Hemby and Yow Units, to be closed on October 8, 2008.

The Letter Agreement expressly included a "Non-Ops Clause," as the second full paragraph on Page 2 thereof, by which Chesapeake agreed to make the same offer under the same terms to the owners of non-operating working interests in the properties described in the three Exhibits. In the Court's opinion, the Non-Ops Clause clearly means that Chesapeake intended to acquire all of the leasehold estate beneath the properties described in the Exhibits. This is further borne out by other provisions in the Letter Agreement which call for delivery of not less than a full 75% net revenue interest in each unit to be acquired by Chesapeake. Non-operating working interest owners included Defendants Freeman Capital, Ltd. ("Freeman Capital"), Wayne E. Freeman, Freeman Resources, Ltd., and FRM GP, LLC (collectively, "Freeman"), and Intervenor Harleton Oil & Gas, Inc. ("Harleton"). Both Buffco and the non-

---

[1] The rights to be purchased were depth-limited to what is commonly known as the Haynesville Shale formation and below. Leasehold rights above the stated depth (100' below the base of the Cotton Valley formation) were to be retained and not sold. In this opinion, the Court has intentionally determined not to specify such depth limitation in each reference to the leases and units to be sold. This is for stylistic purposes only and the Court recognizes at all times that the leasehold interests covered by the Letter Agreement are limited to the deep rights as described therein and do not apply to all depths.

operators, as cotenants in the leasehold estate, were subject to Chesapeake's ability to conduct its own due diligence in determining who held record title to the working interest rights beneath the properties described in the three Exhibits.

Chesapeake contracted with Dwight Snell & Associates to conduct its due diligence regarding title to the properties in question. Don Parkins, a petroleum landman, conducted the research on behalf of Dwight Snell & Associates. Mr. Parkins' title report inaccurately reflected that one of the specific properties in question, the Geisler Unit in Harrison County, Texas, was owned 50% by Buffco and 50% by Freeman. It is undisputed that the correct tabulation of the working interests of record in the Geisler Unit (as of the closing with Chesapeake) was in fact: Buffco – 25%, Freeman – 22%, Freeman Capital – 3%, and Harleton – 50%.

On the second Closing Date (September 18, 2008) and based upon the above inaccurate understanding of the ownership regarding the Geisler Unit, Chesapeake paid the full amount called for in the Letter Agreement ($13,600,000 for the 680-acre Geisler Unit – being a per net acre price of $20,000) to Buffco; in turn, Buffco delivered half of these funds to Freeman. Buffco and Freeman each received $6,800,000 based on Chesapeake's mistaken belief that each owned a 50% interest in the leasehold estate beneath the Geisler Unit. It is undisputed that Harleton and Freeman Capital received none of these funds at the closing or subsequently. It is also undisputed that neither Buffco nor Freeman informed Chesapeake of the correct record ownership in the Geisler Unit at or prior to closing.

Chesapeake and Buffco agreed to delay the third Closing Date, and subsequently, they mutually agreed not to close on those properties at all. Accordingly, working interests in the Bowen, Hemby and Yow Units, among others, were never purchased by Chesapeake. Neither did Chesapeake purchase any of the non-operators' interests in these units.

Freeman Capital and Harleton have yet to receive payment for their 3% and 50% interest in the Geisler Unit, respectively, and each has yet to execute and deliver assignments of their leasehold rights to Chesapeake, though they profess that they are each ready, willing and able to do so upon receipt of the amounts due pursuant to the Letter Agreement for their respective interests. Chesapeake anticipated, by means of its entering into the Letter Agreement and funding the subsequent closing covering the Geisler Unit, that it would obtain all of the record title to the working interests beneath the 680-acre Geisler Unit for the total price of $13,600,000. However, in light of this subsequent litigation and the undisputed facts before the Court, it is now clear that Chesapeake only received a 47% interest in the Geisler Unit but paid the full purchase price for the same as called for and set forth in the Letter Agreement.

On December 31, 2011, Chesapeake and Buffco entered into a Confidential Settlement Agreement, settling all claims between those two parties, and each party's affirmative claims against the other were dismissed. All other claims pending in this action survived and are now before the Court by means of the various motions for summary judgment cited above.

## II. ISSUES PRESENTED

The competing motions for summary judgment noted above raise several disputes in which no genuine issues of material fact exist and which, in the Court's view, are ripe for disposition and adjudication via summary judgment; to wit:

   A. Whether Freeman, Freeman Capital and Harleton are third-party beneficiaries under the Letter Agreement, and as such, have standing to enforce the Letter Agreement's terms.

   B. Whether Buffco and Freeman have been unjustly enriched to the extent of $7, 208,000 by Chesapeake's payment and their receipt of $13,600,000 for the Geisler Unit.

   C. Whether Chesapeake is entitled to a refund from Freeman for amounts overpaid in relation to the purchase of the Geisler Unit.

D. Whether Freeman has valid and enforceable claims against Chesapeake for its failure to close with Freeman as to the Bowen, Hemby and Yow Units.

E. Whether Buffco and/or Freeman violated a "right of first refusal" owed to Harleton pursuant to a February 2003 Letter Agreement and/or a Joint Operating Agreement.

## III. LEGAL STANDARD APPLIED

Summary judgment is a proper means of disposing of issues without a trial if the pleadings and summary judgment evidence show that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-55 (1986). A "genuine issue" is an issue that "can be resolved only by a finder of fact because . . . [it] . . . may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 248. When the movant seeking summary judgment demonstrates the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show there is a genuine factual issue ripe for trial. *Celotex*, 477 U.S. at 323-24. In considering motions for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party and refrain from making credibility determinations. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398 (5th Cir. 2008).

## IV. DISCUSSION AND ANALYSIS

### A. Whether Freeman, Freeman Capital and Harleton are third-party beneficiaries under the Letter Agreement, and as such, have standing to enforce the Letter Agreement's terms.

Freeman, Freeman Capital and Harleton each assert claims against Chesapeake based on its failure to acquire certain interests pursuant to the Non-Ops Clause of the Letter Agreement. In making their claims, they each assert that they are third-party beneficiaries to the Letter Agreement and accordingly can enforce the Letter Agreement even though they were not

signatories. Chesapeake argues in response that these parties are not third-party beneficiaries as to the Letter Agreement because they were not contemplated by Chesapeake and Buffco when Chesapeake and Buffco entered into the Letter Agreement.

A third-party beneficiary is a proper party entitled to sue for breach of a contract made between two other parties if the contracting parties intended to confer a direct benefit on the third party as a part of their agreement. *See MCI Telecomm. Corp. v. Texas Utilities Elec. Co.,* 995 S.W.2d 647, 651 (Tex. 1999). Whether an agreement intends to confer a direct benefit on a third party so as to make that party a third-party beneficiary is a question of law. *In re Palm Harbor Homes,* 195 S.W.3d 672, 677 (Tex. 2006).

In determining this issue, the Court first looks to the four corners of the Letter Agreement itself. The Non-Ops Clause reads as follows:

> Chesapeake also agrees to make this offer to any non-operated working interest owners in the Properties ("Non-Ops") under the same terms and net acre price as stated in this offer. This offer is subject to Chesapeake's due diligence as described in Exhibit B and the following terms and conditions …

The Non-Ops Clause is explicit that Chesapeake will make the same deal under the Letter Agreement to any non-operating working interest owner in the subject properties and subject to its due diligence as to the title. Both Chesapeake and Buffco understood that any third-party ownership must be established and thereupon those parties would receive the same offer, i.e. benefit, from Chesapeake. Further, Chesapeake admits it asked for information regarding the non-operating interest owners from Buffco and requested a copy of any payment and/or billing spreadsheets (typically called Pay-Decks) and other similar documentation as to Buffco's non-operating participants in the Geisler Unit. This further reflects both Chesapeake and Buffco's understanding that third-party ownership interests indeed existed and would need to be verified

6

in order to properly effectuate the Non-Ops Clause. Also, paragraph 12 of the Letter Agreement establishes that unpooled interests which were not earned during the three-year term assignment called for would revert proportionately to both Buffco and the non-operating owners. The existence and role of the non-operating working interest owners was openly contemplated and recognized as part of the Letter Agreement.

It is clear to the Court that the parties understood that non-operating interest owners would benefit from the Letter Agreement and that the signatories intended to confer such a benefit upon such non-operators, i.e. Freeman, Freeman Capital and Harleton. Accordingly, the Court finds and holds that Freeman, Freeman Capital and Harleton are third-party beneficiaries as to the Letter Agreement and have standing to enforce the same.

**B. Whether Buffco and Freeman have been unjustly enriched to the extent of $7,208,000 by Chesapeake's payment and their receipt of $13,600,000 for the Geisler Unit.**

Harleton argues that Buffco and Freeman have been unjustly enriched by Chesapeake's payment of $13,600,000 ($6,800,000 to each) in relation to the sale of the leasehold beneath the Geisler Unit. As owner of a 50% interest in the Geisler Unit and claiming the status of a third-party beneficiary, Harleton asserts that it is entitled to secure specific performance in regard to its interest in this unit.

Similarly, Freeman Capital argues that Chesapeake failed to purchase its properly recorded 3% interest in the Geisler Unit when it was required by the Non-Ops Clause to do so.

It is undisputed that Harleton owns a record 50% interest in the leasehold rights beneath the Geisler Unit and that Freeman Capital owns a record 3% interest in the same. Both interests were properly reflected in the public records of Harrison County, Texas at all times relevant to this dispute including the date the Letter Agreement was signed and the date of the subsequent

7

closing. Such public recordation gave Chesapeake, Buffco and Freeman constructive notice of these interests. Further, the evidence establishes that Buffco and Freeman also had actual notice of these interests. As the operator of the Geisler Unit, Buffco had actual notice of Harleton and Freeman Capital's interests as participating non-operating leasehold owners.

Claims of unjust enrichment are founded on a theory of quasi-contract and arise when a party has been unfairly enriched by the receipt of benefits in a manner not expressly governed or contemplated by contract; however, the law applies a contractual obligation upon the enriched party to restore the benefits to the other party. *See Burlington N. RR. Co. v. Sw. Elec. Power Co.,* 925 S.W.2d 92, 97 (Tex. App.–Texarkana 1996), *aff'd,* 966 S.W.2d 467 (Tex. 1998). A party may recover under the theory of unjust enrichment when a benefit has been obtained from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). In this circumstance, the Court looks to the "simple justice of the case" and inquires whether Buffco and Freeman have received money which rightfully belongs to Harleton and Freeman Capital. *Greer v. White Oak State Bank,* 673 S.W.2d 326, 329 (Tex. App.–Texarkana 1984, no writ) (citing *Staats v. Miller,* 243 S.W.2d 686, 687 (Tex. 1951)). As a result, this Court finds that Buffco and Freeman were unjustly enriched by receiving payment for what should have been Harleton's 50% interest and Freeman Capital's 3% interest.

Acting hand-in-glove with the theory of unjust enrichment is the doctrine of constructive trusts. A constructive trust is an equitable remedy used to prevent or cure an unjust enrichment. *Medford v. Medford*, 68 S.W.3d 242, 248 (Tex. App.–Fort Worth 2002, no pet). To establish a constructive trust, the proponent must prove (1) breach of a special trust, (2) unjust enrichment

of the wrongdoer, and (3) tracing to identifiable res. *Everett v. TK-Taito, LLC*, 178 S.W.3d 844, 859 (Tex. App.–Fort Worth 2005, no pet).

Here, the Court finds that Buffco and Freeman have been unjustly enriched by means of Chesapeake's payment to them of the full $13,600,000 related to the sale of the leasehold rights beneath the Geisler Unit, as 53% of such rights were then owned by Harleton and Freeman Capital. As partners and joint participants in the Geisler Unit, there was a relationship of trust between Buffco, Freeman, Freeman Capital, and Harleton. Buffco and Freeman took undue advantage of Harleton and Freeman Capital even though their interests in the unit were known and properly recorded. This undue advantage created an unjust enrichment which is clearly traced to the closing on September 18, 2008 and the funds paid by Chesapeake at this closing and now held by Buffco and Freeman.

To remedy such unjust enrichment, the Court imposes a constructive trust upon that portion of the funds paid by Chesapeake which rightfully belong to Harleton and Freeman Capital, being in the amount of $7,208,000. Applying what this Court views as the most charitable construction permissible, Buffco, as operator of the Geisler Unit, and Freeman, as a fellow cotenant and participant in the Geisler Unit, conveniently ignored the known and established status of Harleton and Freeman Capital. They both should have known better. Buffco and Freeman were thereby unjustly enriched, and the funds at issue are readily traceable to the $13,600,000 paid by Chesapeake to Buffco and Freeman based on its purchase of the Geisler Unit interests.

Consequently, Buffco and Freeman are held by this Court to be constructive trustees of $7,208,000 (53% of the $13,600,000 paid by Chesapeake for the Geisler Unit), and Harleton and

Freeman Capital are likewise held to be constructive beneficiaries of such amounts with $6,800,000 credited to Harleton and $408,000 credited to Freeman Capital.

Further, this Court finds that specific performance of the Letter Agreement with regard to the Geisler Unit is proper in this case; consequently, Chesapeake is entitled to receive a corresponding assignment of Harleton's 50% interest and Freeman Capital's 3% interest in the Geisler Unit concurrently with the receipt by Harleton and Freeman Capital of the sums recited above from Buffco and Freeman.

### C. Whether Chesapeake is entitled to a refund from Freeman for amounts overpaid in relation to the purchase of the Geisler Unit.

Chesapeake argues that it is entitled to a refund based on the amount overpaid to Freeman as part of the Geisler Unit sale. However, because the Court finds that Harleton and Freeman Capital are third-party beneficiaries, and because a constructive trust has been imposed by this Court in response to the conduct of Buffco and Freeman and their unjust enrichment, the Court finds that Chesapeake is not entitled to a refund from Freeman. Chesapeake is, however, entitled to receive an assignment of Harleton and Freeman Capital's interests in the Geisler Unit, as originally contemplated, when the funds held in such constructive trust by Buffco and Freeman are delivered to Harleton and Freeman Capital. Under these circumstances, Chesapeake's claims for reimbursement must be denied.

### D. Whether the Freeman Defendants have valid and enforceable claims against Chesapeake for its failure to close with Freeman as to the Bowen, Hemby and Yow Units.

Freeman and Freeman Capital (collectively, the "Freeman Defendants") argue that Chesapeake breached the Letter Agreement by failing to close on their interests in the Bowen, Hemby and Yow Units. Such units were to be closed upon pursuant to the third Closing Date of October 8, 2008. Chesapeake and Buffco agreed to first postpone and then drop altogether the

third Closing Date.  Chesapeake argues that the Letter Agreement only required it to close on marketable title, and the Freeman Defendants held merely equitable title to the Hemby and Yow Units.  Further, Chesapeake asserts that it is not liable to Freeman because it never acquired Buffco's interest in the Bowen, Hemby and Yow Units.

The Freeman Defendants admit they own only an equitable title in the Hemby and Yow Units.  Pursuant to Exhibit B to the Letter Agreement, Chesapeake only bargained for the purchase of marketable title as established in the public records as to the properties in question.  Consequently, the Freeman Defendants' claim against Chesapeake regarding its failure to close on the Hemby and Yow Units fails as a matter of law on this point alone and must be denied.

Additionally, Chesapeake never acquired Buffco's interest in the Bowen, Hemby and Yow Units.  The Court finds that Chesapeake would not have purchased Freeman's interest in the units without also acquiring Buffco's interest.  To do so would make the Non-Ops Clause (which is the sole avenue through which Freeman claims) meaningless.  Accordingly, Freeman's claim fails on this point as well as to all three units.  Freeman's claims as to the Bowen, Hemby and Yow Units are denied.

**E. Whether Buffco and/or Freeman violated a "right of first refusal" owed to Harleton pursuant to a February 2003 Letter Agreement and/or a Joint Operating Agreement.**

Harleton argues that Buffco and/or Freeman violated its "right of first refusal" to the Geisler Unit pursuant to a February 21, 2003 Letter Agreement and/or pursuant to a Joint Operating Agreement ("JOA") entered into between Harleton and Buffco.

Buffco and Freeman argue, and the Court finds, that the 2003 Letter Agreement expired by its own terms on October 31, 2005.  This date is well before Buffco entered into the 2008 Letter Agreement with Chesapeake, which is at issue in this case.

Despite Harleton's efforts, an authenticated JOA between Buffco and Harleton evidencing any enforceable "right of first refusal" in the Geisler Unit has not been shown to exist. However, even if the Court assumes *arguendo* that a valid JOA exists between Harleton and Buffco and confers such a "right of first refusal," Harleton's claims still fail.

Any such "right of first refusal" in the Geisler Unit in favor of Harleton has been effectively addressed and remedied by the rulings of the Court set forth above, and as such renders Harleton's asserted breach of a "right of first refusal" moot. Additionally, Harleton admits it would not have purchased Buffco's interest in the Geisler Unit even if Buffco had offered to sell to it at the stated $20,000 per acre price before Buffco closed with Chesapeake. Accordingly, Harleton's claims that it was damaged by a failure to recognize its alleged "right of first refusal" are completely hollow and of no effect. For the reasons recited above, Harleton's claims against Buffco and Freeman based upon a violation of its asserted "right of first refusal" fail as a matter of law and are denied.

## V. CONCLUSION

In accordance with the above analysis, the Court hereby **GRANTS-IN-PART** and **DENIES-IN-PART** the parties' pending motions for summary judgment as follows:

1. Buffco and Freeman are held to be constructive trustees of $7,208,000 (53% of the $13,600,000 paid by Chesapeake) for the Geisler Unit, and Harleton and Freeman Capital are held to be constructive beneficiaries who are entitled to such amounts with $6,800,000 credited to Harleton and $408,000 credited to Freeman Capital.

2. The Letter Agreement shall be specifically performed as to Harleton and Freeman Capital as regards to the Geisler Unit, and Buffco and Freeman shall forthwith pay over and deliver $6,800,000 to Harleton and $408,000 to Freeman Capital,

whereupon Harleton and Freeman Capital shall immediately execute and deliver to Chesapeake assignments of their right, title and interest in the Geisler Unit, with such assignments to be in the same form previously used by Buffco and Freeman on September 28, 2009.

3. Chesapeake's claims for a refund from Freeman are **DENIED**.

4. Harleton's claims for breach of its asserted "right of first refusal" are **DENIED**.

5. Harleton has withdrawn its tortious interference, fraudulent inducement, and common-law and statutory fraud claims against Freeman (Dkt. No. 191) and such are no longer before the Court.

6. Harleton has withdrawn its tortious interference and fraudulent inducement claims against Buffco (Dkt. No. 191) and such are no longer before the Court.

7. Harleton has withdrawn its claim against Chesapeake alleging a violation of a "right of first refusal" concerning Chesapeake's subsequent sale of its portion of the deep rights in the Geisler Unit and such are no longer before the Court.

8. Harleton's fraud claim against Buffco (relating to Buffco's intentional misrepresentation of the record ownership of the Geisler Unit to Chesapeake in anticipation of the September 28, 2009 closing) survives the entry of this Summary Judgment Order and remains before the Court.

9. Harleton's fraud claim against Buffco (relating to Buffco's post-closing offer to purchase Harleton's interest in the Geisler Unit at a price below $20,000 per acre) survives the entry of this Summary Judgment Order and remains before the Court.

10. Chesapeake's claims related to the assertion that Matthew Wolcott and/or the Freeman Mills law firm acted as an agent for Freeman in conveying inaccurate

ownership information regarding the Geisler Unit in anticipation of closing is **DENIED** as moot.

11. Harleton and Freeman Capital are entitled to recover form Buffco and Freeman, in addition to the sums described in this Summary Judgment Order, an amount representing pre-judgment interest at the statutory rate, from September 28, 2009 until entry of a final judgment in this cause.

12. The surviving issues remaining for trial and as noted above are hereby **SEVERED** from the issues adjudicated by means of this Summary Judgment Order, and Harleton is directed to prepare and submit to this Court a Proposed Final Judgment reflecting this Summary Judgment Order.

13. Trial on the severed and surviving issues set forth above is hereby **CONTINUED** from the current trial setting of April 2, 2012 to be reset at a future date by the Court. All remaining pre-trial matters and deadlines as relate to these severed and surviving issues are **STAYED** until further Order of this Court.

**So ORDERED and SIGNED this 22nd day of March, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE